# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY ANN PAZICNI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-117 |
| | ) Judge Nora Barry Fischer |
| RUSSELL P. MILLER, JR., ALLEN | ) |
| CLARKE, and SOUTH | ) |
| CONNELLSVILLE BOROUGH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Bethany Ann Pazicni brings this action under 42 U.S.C. § 1983, alleging various violations of her constitutional rights as well as a state-law claim for intentional infliction of emotional distress ("IIED") against Defendants Russell P. Miller, the Chief of Police of South Connellsville Borough; Allen Clarke; and South Connellsville Borough. (Docket No. 29). Defendants move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Nos. 30, 32). The motions have been fully briefed and are ripe for disposition. (Docket Nos. 31, 33-39, 42). For the reasons that follow, the motions will be granted.

### II. Background

Plaintiff is a member of the Grubbs family, which is well known in South Connellsville for its support for the Borough's volunteer Fire Department. (Docket No. 29 ¶ 10). According to Plaintiff, Miller "has a demonstrable vendetta against the South Connellsville Fire Department

and its supporters[,]" which he has allegedly carried out by "target[ing] Fire Department supporters" with "baseless criminal charges." (*Id.*).

Clarke is Plaintiff's ex-boyfriend and the father of her child. (*Id.* ¶ 12). After their relationship soured, Plaintiff obtained a PFA order against Clarke. (*Id.* ¶ 14). Clarke has what Plaintiff describes as "an unusually friendly and inappropriate relationship with the Police Department of South Connellsville Borough, namely Miller and Officers Alex Byers and Frank Neal." (*Id.* ¶ 16). "[D]uring early to mid-September 2016, Clarke and Miller began to meet and conspire to exploit and violate [Plaintiff's] civil liberties[.]" (*Id.*). To that end, on September 9, 2016, Miller, "at Clarke's urging," issued Plaintiff two non-traffic citations – one for disorderly conduct and one for harassment. (*Id.* ¶¶ 21-21). The first citation, which charged Plaintiff with disorderly conduct, alleged that Plaintiff was driving past Clarke's residence "causing alarm and inconvenience" and "making threats to alarm residents." (*Id.* ¶ 20). The second citation, which charged Plaintiff with harassment, alleged that she was sending harassing text messages to Clark and "[d]riving around [his] residence and following him." (*Id.* ¶ 21). According to Plaintiff, these events "never took place." (*Id.* ¶ 19). A summary trial was scheduled for January 9, 2017, but Miller failed to appear and the magistrate dismissed the citations. (*Id.* ¶ 25).

Meanwhile, Clarke continued to harass Plaintiff by driving past her house at all hours of the day and engaging in other conduct that Plaintiff believed violated the PFA order. (*Id.* ¶ 38). Plaintiff and her mother repeatedly reported the alleged harassment to the South Connellsville Police Department, but to no avail. (*Id.* ¶ 26). Instead, according to Plaintiff, "Miller and his police department took overt affirmative actions to suppress and obstruct [Plaintiff's] ability to report violations to the police." (*Id.*). For example, the last time Plaintiff and her mother reported the alleged PFA violations to Miller, Miller told "her that he 'did not care to hear about any

further alleged violations of the Order' and that if she 'did report any further violations she would be charged with disorderly conduct.'" (*Id.* ¶ 27). Miller also told Plaintiff that any additional alleged violations of the PFA order should be reported "by reaching out to the officer on duty via their individual Facebook page." (*Id.*).

On October 11, 2016, Miller was charged with official oppression by the Fayette County District Attorney's Office "for using his position as Chief of Police to intimidate and stifle the protected free speech [of] resident Mary Lubich-Riley, who is affiliated with the South Connellsville Volunteer Fire Department[.]" (*Id.* ¶ 31). He has since been placed on restricted duty. (*Id.* ¶ 32). Plaintiff alleges that "Miller's suppression of the constitutional rights of Borough citizens through actions of malicious prosecution was ongoing during his term as Chief of Police." (*Id.* ¶ 33). As an example, Plaintiff alleges that Miller had criminal charges filed against Amanda Burnsworth in September 2015, which were dismissed at a preliminary hearing. (*Id.* ¶ 34). And in the spring of 2016, Miller arrested Kenneth Harshman and threated to charge him with serious crimes if he "did not agree to provide a statement that would implicate other supporters of the Borough Fire Department." (*Id.* ¶ 35).

Plaintiff filed this suit on January 24, 2017. (Docket No. 1). After Defendants filed a motion to dismiss, Plaintiff filed an amended complaint. (Docket No. 29), which includes claims for malicious prosecution against Miller and Clarke (count I), failure to train against the Borough (count II), state-created danger against Miller (count III), a violation of equal protection against Miller (count IV), municipal liability against the Borough (count V), civil conspiracy against Miller and Clarke (count IV), fabrication of evidence against Miller and Clarke (count VII), and IIED against Miller and Clarke (count VIII). Defendants now move to dismiss the amended complaint in its entirety. (Docket Nos. 30, 32). They filed briefs in support of their respective

3

motions on April 24, 2017. (Docket Nos. 31, 33). Plaintiff submitted responses and briefs in opposition on May 8, 2017. (Docket Nos. 34-37). Defendants filed reply briefs on May 22, 2017. (Docket Nos. 38, 39). And, after receiving leave of Court, on May 30, 2017, Plaintiff filed a sur-reply. (Docket No. 42).

**III.    Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must include "enough factual matter" to "'nudge [the plaintiff's] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, the court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assoc., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of…facts is improbable," will not be dismissed as long as the pleader demonstrates that his or

4

her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 –56).

Nevertheless, the facts pled do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231–32 (quoting *Twombly*, 550 U.S. at 554–56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. Discussion

### A. Malicious Prosecution

In count I, Plaintiff asserts a malicious prosecution claim under § 1983 against Defendants Miller and Clarke. (Docket No. 29). In moving to dismiss this claim, Miller argues that Plaintiff failed to plead that she suffered a deprivation of liberty, which Miller says is required to establish a § 1983 malicious prosecution claim. (Docket No. 31). Clarke raises the same argument (in addition to a few others).[1] (Docket No. 33).

As a threshold matter in any § 1983 suit, the Court must "identify the specific constitutional right at issue." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (internal citation and quotation marks omitted). "[P]rosecution without probable cause is not, in and of itself, a constitutional tort" actionable under § 1983. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)). There must instead be some "constitutional peg on which to hang such" a claim. *Albright*, 510 U.S. at 270 n.4.

---

[1] Clarke also argues that he cannot be held liable because he did not initiate the proceedings against Plaintiff and was not a state actor. (Docket No. 33). These arguments need not be addressed because the Court is dismissing count I on different grounds. Clarkes raises the same arguments as to Plaintiff's fabrication claim in count VII, but that claim will also be dismissed on other grounds, as well.

Typically, that "peg" is the Fourth Amendment, in which case the plaintiff must establish that she suffered a deprivation of her "liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Plaintiff has not done that (and as will be explained below, she has not attempted to do so).[2] She was issued two citations for summary offenses and never arrested or taken into custody. Moreover, she has not alleged that any "onerous types of pretrial, non-custodial restrictions" were placed on her. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). In fact, there is no suggestion that type of restrictions were placed on her. Granted, she had to attend a summary trial, but "merely attending trial does not amount to a seizure for Fourth Amendment purposes." *Black v. Montgomery Cnty.*, 835 F.3d 358, 367 (3d Cir. 2016). So, to the extent it is based on the Fourth Amendment, Plaintiff's malicious prosecution claim cannot stand.

Plaintiff argues, however, that her claim "may be analyzed under the due process clause" of the Fourteenth Amendment instead of the Fourth Amendment. (Docket No. 35 at 7) (citing *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998)). To be sure, the Court of Appeals has recognized "that a section 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (citing *Torres*, 163 F.3d at 173). In such case, the deprivation of liberty requirement does not apply. *See Johnson*, 477 F.3d at 82 n.8. Instead the

---

[2] Plaintiff's argument on this point is actually a bit muddled. She argues, on the one hand, that *Torres* allows her to raise a malicious prosecution claim based on the procedural due process clause. (Docket No. 42 at 1). As explained in the text, she is correct on this point. But, then she goes on to say that her malicious prosecution claim is "based on the fact that Miller violated her procedural due process rights by fabricating evidence against her to initiate a criminal proceeding, which, taken together, constitutes a deprivation of liberty." (*Id.*). This is where things get muddled. The fabrication of evidence, in and of itself, does not amount to a "deprivation of liberty." Rather, as explained in greater detail below, to prove a procedural due process claim, Plaintiff would have to show (1) that evidence was fabricated (this is the "due process" component) and (2) that she suffered a deprivation of liberty as a result of the fabricated evidence. As the Court will explain *infra*, she has failed.

analysis turns on the particular constitutional right alleged to have been violated. *See Olasz v. Welsh*, 301 F. App'x 142, 144 (3d Cir. 2008) (the "analysis of a malicious prosecution claim … must begin with a determination of whether a constitutional violation exists").

Be that as it may, the Third Circuit Court of Appeals has recognized a *standalone* claim for fabrication of evidence under the procedural due process clause—as Plaintiff herself recognizes by alleging such a claim in count VII. *See Black*, 835 F.3d at 369 (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)). In doing so, the Court of Appeals actually rejected the notion that fabrication claims and malicious prosecution claims are necessarily "intertwined and that the former can exist only as a portion of the latter." *Halsey*, 750 F.3d at 290.

Thus, in the Court's view, it does not make sense to allow Plaintiff to pursue a procedural due process-based malicious prosecution alongside a standalone fabrication of evidence claim. These claims would be duplicative—both seek to redress the very same alleged violation of procedural due process—only Plaintiff would have a heavier burden with the malicious prosecution claim because she would have to prove that there was not probable cause to cite her and that Defendants' conduct was malicious, in addition to the requirements for a fabrication claim. *See Johnson*, 477 F.3d at 82 (explaining that the elements of a § 1983 malicious prosecution claim include the elements of the common law tort plus the deprivation of a constitutional right). As a result, the Court will dismiss count I and address Plaintiff's fabrication claim on its own, not as a portion or element of a malicious prosecution claim.

### B. State-Created Danger

In count III, Plaintiff alleges a state-created danger claim under the due process clause of the Fourteenth Amendment. (Docket No. 29). Miller argues that Plaintiff failed to plead that she suffered any harm or that Miller affirmatively misused his authority in any way, which is

required to establish a due process violation under the state-created danger theory. Rather, Miller says, "[t]he crux of Plaintiff's allegations is that Chief Miller obstructed and refused to accept or investigate her complaints that Clarke had violated the PFA against him, i.e., he failed to act on Plaintiff's alleged allegations." (Docket No. 31 at 13).

The due process clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law …." U.S. CONST. amend. X IV, § 1. "[N]othing in the language of the Due Process Clause itself requires the State to *protect* the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989) (emphasis added). The Third Circuit and other courts of appeals, however, "have adopted a 'state-created danger' exception to the general rule that the Due Process Clause imposes no duty on states to protect their citizens from private harm." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016). The state-created danger theory "recognizes that a constitutional violation may result 'when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Burella v. City of Philadelphia*, 501 F.3d 134, 146-47 (3d Cir. 2007) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

To state a due process claim under the state-created danger theory, a plaintiff must plead facts in support of the following elements:

> (1) "the harm ultimately caused was foreseeable and fairly direct," (2) "a state actor acted with a degree of culpability that shocks the conscience," (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general;" and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Id.* at 154 (quoting *Bright*, 443 F.3d at 281).

The fourth element—the "affirmative act" element—is often the most hotly contested, as it is here. As the Court of Appeals has stressed, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. This requirement "serves an important purpose: to distinguish cases where government officials might have done more to protect a citizen from a risk of harm in contrast to cases where government officials created or increased the risk itself." *Morrow v. Balaski*, 719 F.3d 160, 186 (3d Cir. 2013) (Ambro, J., concurring). While the rule is easily stated, courts have struggled to "draw[] a line between an affirmative act and a failure to act." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016). The Court of Appeals has thus recently attempted to clarify the inquiry. *Id.* Rather than trying to distinguish between act and omission, the Court of Appeals has explained, it is "useful to first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *Id.* This "helps to clarify whether the state actor's conduct 'created a danger' or 'rendered the citizen more vulnerable to danger than had the state not acted at all.'" *Id.* (quoting *Bright*, 443 F.3d at 281).

Plaintiff contends that she has satisfied this element by pleading the following affirmative acts: "(1) Miller conspired with Clarke to initiate false criminal proceedings against her to intimidate her from reporting PFA violations;" "(2) Miller intentionally placed outrageous barriers by directing her to file reports on social media;" "(3) Miller threatened her with criminal charges if she reported PFA violations;" and "(4) Miller inexcusably chose not to account for [Plaintiff's] multiple reports of PFA violations by Clarke during [his] report to Borough Council." (Docket No. 35 at 11).

These allegations, however, are not sufficient to satisfy the "affirmative act" element. On this point, the Third Circuit's decision in *Burella*, 501 F.3d at 146-48, is particularly instructive. In that case, the plaintiff obtained three PFA orders against her husband but continued to receive threatening phone calls from him. *Id.* at 138. When she reported the calls to the police, she was told that nothing could be done. *Id.* Then, her husband went to her home and shot her. *Id.* In arguing that she satisfied the "affirmative act" requirement, the plaintiff alleged that the police "officers' 'continued refusal to enforce the [PFA] order and follow state law requiring [her husband's] arrest, together with their false direction that "there was nothing they could do," as well as overall inadequate intervention were affirmative acts which together increased the likelihood of harm.'" *Id.* at 147. The Third Circuit, however, rejected the plaintiff's "attempt to characterize the officers' alleged wrongdoing as an affirmative misuse of authority." *Id.* "Rather, it is apparent that what she actually contends is that the officers failed to act at all." *Id.*

So, too, here. Despite Plaintiff's artful pleading, the gravamen of her claim is still that Miller and his police officers failed to enforce the PFA order against Clarke, not that Miller took any action that created or increased the risk to her. Indeed, Plaintiff admits as much in her brief: "[h]ad Miller enforced the PFA against Clarke," Plaintiff argues, "[she] would not have been subjected to continued abuse or harassment." (Docket No. 35 at 11). This amounts to a failure to act, not the type of affirmative misuse of state authority that can form the basis of a state-created danger claim. In the words of the Third Circuit in *L.R.*, the alleged conduct did not result in a change in the status quo. *L.R.*, 836 F.3d at 244. The risk of harm posed by Clarke remained the same, irrespective of what Miller allegedly did or did not do. Absent conduct on the part of Miller creating or increasing that risk, Plaintiff cannot make out a state-created danger claim. Thus, this count will be dismissed.

C.     **Equal Protection**

In count IV, Plaintiff asserts an equal protection claim. (Docket No. 29). Miller argues that Plaintiff has failed to state such a claim because she has not alleged that she was discriminated against because of her membership in a protected class "and/or that she received different treatment than similarly situated individuals." (Docket No. 31 at 14). In her response, Plaintiff clarifies that she is attempting to pursue a class-of-one claim, which she says obviates the need to prove her membership in a protected class. (Docket No. 35).

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. To state an equal protection claim under a class-of-one theory, as Plaintiff is attempting to do, she must establish that she was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To be 'similarly situated,' parties must be 'alike in all relevant aspects.'" *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)).

Plaintiff alleges, in a conclusory manner, that she "is similarly situated to other citizens of South Connellsville in all other relevant aspects" and that "[o]ther similarly situated individuals, outside of the Grubbs family, have had no issues with filing reports with Defendant Miller." (Docket No. 29 ¶¶ 73, 74). However, she has not actually identified any of the similarly situated individuals or pointed to any instances when such individuals were treated differently than her with regard to the enforcement of PFA orders. Simply alleging that unidentified "other" individuals did not have issues filing reports about PFA violations with Miller is not enough to survive Miller's motion. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)

(dismissing class-of-one claim because the plaintiff failed to allege "the existence of similarly situated individuals"). Accordingly, Plaintiff's equal protection claim will be dismissed.

## D. Fabrication of Evidence

In count VII, Plaintiff alleges that she "suffered a deprivation of her procedural due process rights under the Fourteenth Amendment" on account of fabricated evidence. (Docket No. 29 ¶ 98). Defendants have raised various arguments as to why this claim should be dismissed. Among them, Miller contends that Plaintiff's "fabrication claim does not describe any deprivation of liberty," as is required to state a procedural due process claim. (Docket No. 39 at 2). The Court agrees and thus need not address the parties' remaining contentions.

As already noted, the Court of Appeals has recognized a standalone claim for fabrication of evidence, which arises under the procedural component of the Fourteenth Amendment's due process clause. *See Black*, 835 F.3d at 369 (citing *Halsey,* 750 F.3d at 294). However, as the Second Circuit explained in *Zahrey v. Coffey*, a case that the Court of Appeals favorably cited in *Black*, while "[l]itigants sometimes speak of a 'right to due process' … the Constitution does not guarantee 'due process' in the abstract; it guarantees that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" 221 F.3d 342, 348 n.4 (2d Cir. 2000)) (quoting U.S. CONST. amend. V). Thus, to state a procedural due process claim involving the fabrication of evidence, it is not enough to allege that evidence was fabricated. A plaintiff must also allege that she was deprived of her liberty in some manner as a result of the allegedly fabricated evidence.[3] *See Cairel v. Alderden,* 821 F.3d 823, 831 (7th Cir. 2016) ("For such a claim, the

---

[3] The Court recognizes that in *Black*, the Third Circuit did not expressly address the deprivation of liberty requirement when discussing the plaintiff's procedural due process claim. The Court of Appeals did, however, conclude that the plaintiff was deprived of her liberty for the purposes of the Fourth Amendment because she "was required to fly from California to Pennsylvania for twelve pre-trial conferences in just a year 'to appear in court at the state's command.'" *Black,* 835 F.3d at 368 (quoting *Albright,* 510 U.S. at 278 (Ginsburg, J., concurring)). Presumably, such a deprivation would also count for the purposes of the Fourteenth Amendment. Although the Court of Appeals did not expressly say so, this Court reads *Black* as impliedly recognizing that such a showing was

plaintiff must have suffered a deprivation of liberty."); *Zahrey*, 221 F.3d at 349 ("[I]f Zahrey had claimed only that Coffey fabricated evidence and did nothing to precipitate the sequence of events that resulted in a deprivation of Zahrey's liberty, no constitutional violation would have been alleged."). "[T]he accused does not need to be tried and convicted for a deprivation to occur[;] something short of a conviction—such as pretrial detention—is sufficient." *Myvett v. Chicago Police Detective Edward Heerdt*, --- F. Supp. 3d ----, 2017 WL 75738, at *10 (N.D. Ill. Jan. 9, 2017).

In *Zahrey*, for example, the plaintiff was confined for eight months without bail on the basis of fabricated grand jury testimony. Although he was subsequently acquitted, the Second Circuit concluded that he pled "a classic constitutional violation: the deprivation of his liberty without due process. The liberty deprivation is the eight months he was confined, from his bail revocation (after his arrest) to his acquittal, and the due process violation is the manufacture of false evidence." *Id.* The same was true in *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1317 (11th Cir. 2015), another case that the Third Circuit cited favorably in *Black*. There, the plaintiff was held for two years awaiting trial on false charges, and the court considered that "a deprivation of liberty redressable under the Due Process Clause." *Id.* at 1328.

By contrast, in this case, Plaintiff has not pled that she was deprived of her liberty in any manner as a result of the allegedly fabricated evidence. To reiterate, Plaintiff was issued two citations for summary offenses but never had any restrictions placed on her ability to travel—or any other types of restrictions, for that matter. Although she had to appear at a summary trial, "the burden of appearing in court and attending trial" does not, "in and of itself, constitute a deprivation of liberty" for the purposes of the Fourteenth Amendment. *Alexander v. McKinney*,

---

necessary to establish a procedural due process claim for fabrication of evidence. Otherwise, the plaintiff would not have been able to state a procedural due process claim. As further explained in the text, the Court of Appeals' citation to cases from outside of this circuit that endorsed such a requirement bolsters this conclusion.

692 F.3d 553, 557 n.2 (7th Cir. 2012). Absent such a deprivation, Plaintiff cannot state a procedural due process claim. Accordingly, count VII will be dismissed.

E. **Failure to Train and Municipal Liability**

In counts II and V, Plaintiff alleges claims for failure to train and municipal liability against the Borough. Because Plaintiff has not sufficiently pled an underlying violation of her constitutional rights, her failure to train and municipal liability claims necessarily must be dismissed, as well. *See Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996) ("Of course, had there not been an underlying constitutional violation in the first instance, plaintiff's 'failure to train' claim against the City would not stand."); *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("[I]f there is no violation in the first place, there can be no derivative municipal claim.").

F. **Civil Conspiracy**

In count VI, Plaintiff alleges that Miller and Clarke engaged in a conspiracy to violate her constitutional rights. "Absent a showing of an underlying violation of a federal right, no claim for conspiracy under § 1983 can be established." *Bailey v. Marcus*, No. CIV.A. 13-255, 2013 WL 2422754, at *5 n.3 (W.D. Pa. May 31, 2013); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir.1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."). Hence, this count will be dismissed.

G. **Leave to Amend**

The Court's next inquiry is whether the dismissal of the federal claims in Plaintiff's First Amended Complaint should be with prejudice or without prejudice. Plaintiff previously was granted leave of Court to file her amended complaint but has not requested leave to amend a

second time in her responsive briefs nor supplied the Court with a proposed Second Amended Complaint such that leave to amend may be denied. *See, e.g., U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("'[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ...—does not constitute a motion within the contemplation of Rule 15(a).'") (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *McWreath v. Range Res.–Appalachia, LLC*, 645 F. App'x 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend.'") (quoting *Zizic*, 728 F.3d at 243). In any event, the Court concludes that amendment to Plaintiff's § 1983 claims would be futile because such claims are based on a set of facts that are not cognizable under the proffered legal theories. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."); *Centifanti v. Nix,* 865 F.2d 1422, 1431 (3d Cir. 1989) ("[A] district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."). Accordingly, Plaintiff's federal claims will be dismissed, with prejudice.

    **H.**    **IIED**

Because all of Plaintiff's federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction over her pendent state law claim for IIED and will dismiss that claim, without prejudice. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction.").

**V.**    **Conclusion**

For the foregoing reasons, Defendants' motions to dismiss (Docket Nos. 30, 32) will be

granted. An appropriate Order follows.

s/ *Nora Barry Fischer*<br>Nora Barry Fischer<br>U.S. District Court

Date:   June 5, 2017
cc/ecf: All counsel of record